IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EDWARD TRIGO, (TDCJ-CID #1173465) | § § § | |
| Plaintiff, | § § § | |
| vs. | § § | CIVIL ACTION H-05-2012 |
| TDCJ-ID OFFICIALS, *et al.,* | § § § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Edward Trigo, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division, sued in June 2005, alleging civil rights violations resulting from a denial of medical care. Trigo, proceeding *pro se* and *in forma pauperis*, sued TDCJ-CID officials; the University of Texas Medical Branch ("UTMB"); Texas Tech University Health Science Center ("TTUHSC") Medical Staff; Physician's Assistant Jones; Physician's Assistant Joseph Curry; and the TTUHSC and UTMB Medical Directors, and the Regional Medical Director of TDCJ-CID.

The threshold issue is whether Trigo's claims may proceed. This court concludes that Trigo's claims lack merit and are dismissed, for the reasons stated below.

**I.     Plaintiff's Allegations**

In July 2003, while Trigo was incarcerated at the Holliday Unit, he was diagnosed with hepatitis C virus, diabetes, and high blood pressure. Prison officials placed Trigo in the

Managed Health Care Program, under which his liver enzyme levels were monitored every ninety days. On July 10, 2003, Physician's Assistant Jones evaluated Trigo and found that his alanine aminotransferase ("ALT")[1] level was 59 and his AST was 47. Blood work performed on July 31, 2003 showed his ALT to be 152 and AST to be 114. Trigo told Physician's Assistant Curry about the rapid rise in his enzyme levels. Physician's Assistant Curry told Trigo that the TDCJ-CID would not treat him for hepatitis C until Trigo had been in the "system" for at least one year. Physician's Assistant Curry also advised Trigo that the increase in liver enzymes was due to the nature of the disease. By January 2004, Trigo's ALT was 378 and his AST level was 166. Medical personnel did not refer Trigo to a specialist for additional liver tests.

At the Price Daniel Unit, a nurse told Trigo that although he met the criteria to begin treatment at the TTUHSC, he would not be treated because he had a discretionary parole release date of August 23, 2004, which meant that there was insufficient time to complete the treatment. In June 2004, the Texas Board of Pardons and Paroles denied Trigo release on parole and scheduled Trigo for another parole review in August 2005. In August and October 2004, Trigo asked to be reconsidered for treatments but was told that his enzyme

---

[1] ALT is an enzyme that appears in liver cells. An increase in ALT levels is an indicator of acute liver cell damage. STEDMAN'S MEDICAL DICTIONARY 40 (27th ed. 2000); Hepatitis C International Website, available at http://www.focusonhepc.com/alt.html.

levels were too high and that he no longer met the criteria for treatment. Trigo blames the TTUHSC Medical Committee for these delays in his treatment.

In January 2005, Trigo was transferred from the Price Daniel Unit to the Estes Unit, where he underwent a medical evaluation. Physician's Assistant Babbili and Dr. Turner determined that Trigo should be transferred to John Sealy Hospital in Galveston to treat possible kidney and heart failure. Doctors at John Sealy Hospital told Trigo that he had cirrhosis of the liver. On his return to the Estes Unit, Dr. Raff told Trigo that he could not be treated for hepatitis C virus because of complications.

On April 4, 2005, a nurse told Trigo that because of the cirrhosis Trigo would not be treated for hepatitis C virus. He was treated for the cirrhosis, receiving medication. Trigo was transferred to John Sealy Hospital on April 22, 2005. A physician told Trigo that he would require a liver transplant within five years. The physician also removed fluid from Trigo's abdominal region. Trigo was evaluated by a gastrointestinal specialist and referred to a hepatologist. On his return to the Estes Unit, Trigo's medications were altered.

Trigo was seen by medical personnel on the following dates: July 10, 2003; July 17, 2003; July 31, 2003; August 10, 2003; March 4, 2004; May 21, 2004; June 5, 2004; June 8, 2004; August 20, 2004; August 25, 2004; October 10, 2004; January 13, 2005; January 21, 2005; January 24, 2005; February 7, 2005; April 4, 2005; April 22, 2005; May 4, 2005; hospitalized January 24 to 28, 2005; and hospitalized April 22 to 25, 2005.

Trigo alleges that the failure to treat the hepatitis C virus led to cirrhosis of the liver. He complains the defendants failed to provide him with prompt and proper medical

treatment. He asserts the defendants should have provided him with interferon/ribavirin therapy. Trigo seeks $4,000,000.00 in compensatory damages; $3,000,000.00 in punitive damages; and unspecified injunctive relief.

**II.     Analysis**

Under 28 U.S.C. § 1915A, federal courts are authorized to review, before docketing, if feasible, or in any event as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. The court is to dismiss any portion of the complaint that is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A governs this suit by a prisoner against a prison official. In *Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998), the Fifth Circuit held that Section 1915A applies even when a prisoner has paid the required filing fee.

A complaint is frivolous if it lacks an arguable basis in law or fact. *See Denton v. Hernandez,* 504 U.S. 25, 31 (1992); *Richardson v. Spurlock,* 260 F.3d 495, 498 (5th Cir. 2001) (citing *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997)). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998) (quoting *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997)).

"[I]nadequate medical care by a prison doctor can result in a constitutional violation for purposes of a § 1983 claim when that conduct amounts to deliberate indifference to [the prisoner's] serious medical needs, constitut[ing] the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Stewart v. Murphy,* 174 F.3d 530, 533 (5th Cir. 1999) (quoting *Estelle v. Gamble,* 429 U.S. 97 (1976)).  Under the "deliberate indifference" standard, a prison official is not liable for the denial of medical treatment "unless the official knows of and disregards an excessive risk to inmate health or safety."  *Stewart*, 174 F.3d at 534 (citing *Estelle*, 429 U.S. at 104).  Malpractice and negligent treatment do not rise to the level of a constitutional tort, *see Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir. 1993). A claim of "unnecessary and wanton infliction of pain repugnant to the conscience of mankind," can state a claim.  *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997) (citing *Estelle,* 429 U.S. at 105-106).

To state an Eighth Amendment claim, a plaintiff must allege a deprivation of medical care sufficiently serious to show that "the state has abdicated a constitutionally-required responsibility to attend to his medical needs," *Bienvenu v. Beauregard Parish Police Jury,* 705 F.2d 1457, 1460 (5th Cir. 1983), and that a prison official knew of and disregarded "an excessive risk to inmate health or safety." *Stewart v. Murphy,* 174 F.3d 530, 533 (5th Cir. 1999) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  "For an official to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (quoting *Farmer*, 511

U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk." *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994) (citing *Farmer,* 511 U.S. at 842 & n.8).

Deliberate indifference is an extremely high standard to meet. An incorrect diagnosis by prison medical personnel does not state a claim for deliberate indifference. *Domino v. Texas Department of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001) (citing *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985)). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson,* 759 F.2d at 1238.

The decision whether to provide additional or different treatment "is a classic example of a matter for medical judgment." *Estelle,* 429 U.S. at 107. The "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer,* 511 U.S. at 838, 114 S. Ct. 1970. "Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimizana,* 122 F.3d 286, 292 (5th Cir. 1997).

Trigo complains that TDCJ-CID medical personnel did not treat his hepatitis in a timely manner. Trigo explains that he was initially diagnosed in July 2003, but TDCJ-CID refused to treat him immediately. He acknowledges that medical personnel were monitoring his enzyme levels to determine if he met the criteria for treatment. After several evaluations

by medical personnel at different units, Trigo was told that he was too ill for treatment. He asserts that the delay in treatment caused him to develop cirrhosis of the liver.

In *Ferguson v. Arce*, 2004 WL 1427110 (5th Cir. 2004), the Fifth Circuit analyzed similar complaints. In that case, as here, the inmate had hepatitis C, which had been monitored and treated. The fact that the plaintiff did not think the medical care he received was adequate did not state a claim of deliberate indifference to serious medical needs. Although Trigo clearly alleges a serious medical need, he has not alleged facts that, if proven, would show that the medical decisions as to when and how to treat his hepatitis constituted deliberate indifference. The records of the examinations, diagnoses, and medications Trigo received preclude such a showing. *See Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir. 1993). Trigo was seen by medical personnel on numerous occasions and they evaluated his eligibility for treatment. Prison officials monitored his enzyme levels and liver function. Medical personnel determined that, for different reasons at different times, he was not a candidate for treatment. Trigo claims that he should have been treated earlier and differently, but a disagreement with medical personnel about when treatment should begin and that it should include does not state an Eighth Amendment claim for denial of adequate medical care.

The facts Trigo alleges as to the treatment he received preclude a finding that the medical care provided violated his constitutional rights. Trigo's allegations show that medical personnel monitored his condition, examined him on numerous occasions, and prescribed medications. *Bass v. Sullivan*, 550 F.2d 229 (5th Cir. 1977). His complaints that

he did not receive more aggressive, earlier, or longer drug treatment is, as a matter of law, inadequate to support a deliberate indifference showing. Trigo's claim of deliberate indifference to his serious medical needs is dismissed as frivolous. 28 U.S.C. § 1915A(b)(1).

## IV.   Conclusion

The action filed by Edward Trigo (TDCJ-CID Inmate #1173465) lacks an arguable basis in law. His claims are dismissed with prejudice under 28 U.S.C. § 1915A(b)(1). Trigo's motion for physical examination, (Docket Entry No. 7), motion to compel medical records, (Docket Entry No. 8), motion to appoint counsel, (Docket Entry No. 9), and motion for bench warrant, (Docket Entry No. 10), are denied as moot. Any remaining pending motions are denied as moot.

The TDCJ-CID must continue to deduct twenty percent of each deposit made to Trigo's inmate trust account and forward payments to the court on a regular basis, provided the account exceeds $10.00, until the filing fee obligation of $250.00 is paid in full.

The Clerk is directed to provide a copy to the parties; the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas, 78711, Fax Number (512) 936-2159; and Clerk of Court, United States District Court for the Eastern District of Texas, 211 West Ferguson, Tyler, Texas 75702, attention: Betty Parker.

SIGNED on December 16, 2005, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge